IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| WADE BURRIS, Individually and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>vs.<br><br>**THE SHERWIN-WILLIAMS COMPANY**<br><br>**Defendant.** | CASE NO. 4:15-CV-00343-DW |

### PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Wade Burris, individually and on behalf of the Settlement Class (as defined in the Settlement Agreement and stated below), by and through Co-Lead Settlement Class Counsel, hereby moves this Court for Final Approval of the parties' Class Action Settlement. In support of his Motion and Memorandum Plaintiff respectfully states as follows:

### I. INTRODUCTION AND BACKGROUND

On or about March 18, 2015, Plaintiff filed suit against The Sherwin-Williams Company for alleged violations of the Telephone Consumer Protection Act ("TCPA"). During the period from January 23, 2015 to January 29, 2015, Plaintiff and the Settlement Class Members texted STOP in order to unsubscribe from receiving additional Paint Pro Alerts text messages from Defendant Sherwin-Williams. Due to a software configuration error during this period, Plaintiff and the Settlement Class Members received a total of 682 additional promotional text messages. Plaintiff alleges that these additional texts sent by Sherwin-Williams violate the TCPA.

After extensive and arm's length negotiations, the parties entered into the Settlement Agreement, which provides valuable and important benefits for the Settlement Class Members. The Settlement removes the risk of non-recovery (or a lesser recovery) to the Settlement Class

1

members, eliminates the expense of trial, and allows for the immediate payment of funds to the Settlement Class members in this class action. Each Settlement Class Member received notice of the Settlement by direct mail. No Settlement Class Member has objected to or opted-out of the Settlement.

On November 17, 2015, this Court preliminary approved the Settlement and directed that notice be provided to the Class.

## II. SUMMARY OF THE SETTLEMENT

Defendant has agreed to create a settlement fund in the amount of $325,000.00. The settlement fund is to be allocated as follows:

1. $209,667.00 to cover the claims for all Settlement Class Members, who will receive a Cash Award in an amount equal to approximately $307.00 per text for each Paint Pro Alerts text message sent to his or her cellular phone during the Class Period, as listed in the Notice Dataset;

2. Settlement Class Counsel's Attorney's Fees and case expenses in the amount of $108,333.00;

3. An incentive award for the named Settlement Class Representative in the amount of $5,000.00;

4. Costs of notice and claims administration in the amount of $2,000.00.

## III. THE REQUIREMENTS OF RULE 23 ARE SATISFIED.

### a. The Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.

The Settlement Class meets all of the requirements for class certification pursuant to Federal Rule of Civil Procedure Rule 23(a). Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all

2

Case 4:15-cv-00343-DW   Document 26   Filed 02/09/16   Page 2 of 16

members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

First, in addition to Plaintiff, there are 218 members of the Settlement Class and thus the Class is clearly so numerous that joinder of all members is impractical.

Second, the same legal and factual questions are present for each member of the Settlement Class. "The threshold of 'commonality,' is not high." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted). "[T]he rule requires only that resolution of the common questions affect all or a substantial number of class members." *Id.* (citation omitted). The questions of law and fact common to the Settlement Class, include, *inter alia*:

    (a)    Whether the subject texts and/or calls were auto-dialed;

    (b)    Whether Defendant obtained valid consents from consumers to receive the auto-dialed calls;

    (c)    Whether the subject calls are covered by the TCPA;

    (d)    Whether the subject calls violate the TCPA;

    (e)    Whether the class members are entitled to relief under the TCPA;

    (f)    Whether Defendant acted willfully or knowingly entitling Plaintiff and the class to treble damages.

In regard to the third requirement, "[a] sufficient nexus is established [to show typicality] if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 89 (citations omitted). The claims of the Representative Plaintiff are typical of the claims of the members of the Settlement Class, as

Plaintiff's claims against Defendant for alleged violations of the TCPA are the same as the rest of the Class. As such, the issue of whether Defendant's action violated the TCPA is the same for the class representative as it is for the class members.

The fourth prerequisite for certification is that the representative parties will fairly and adequately protect the interests of the class. Satisfaction of this issue requires that the moving party show that: (1) the interests of Representative Plaintiff do not conflict with the interests of any other member of the Settlement Class; and (2) the counsel chosen by the Representative Plaintiffs are qualified, experienced and able to vigorously conduct the proposed class action litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

The interests of Representative Plaintiff here do not conflict with the interests of any other Settlement Class Member, as he seeks the same relief for the violation of the TCPA. Further, as demonstrated by the efforts of Co-Lead Settlement Class Counsel to date, they have protected the interests of Representative Plaintiff and Settlement Class Members, and will continue to do so. Additionally, numerous other state and federal courts have previously held in other class action litigation that Mr. Phalen and Mr. Burgess are adequate Class Counsel.[1]

---

[1] Plaintiff's counsel will refrain from listing all of Plaintiff's Counsels' qualifications to be class counsel in this case, but the Court can take judicial notice that Judge Maughmer, in *Rizzo v. Hendrick Automotive,* Case No. 08-0137-CV-W-JTM, appointed Mitchell Burgess and Ralph Phalen to be co-lead Class Counsel in a case involving thousands of Missouri residents that ultimately settled (following the Court's grant of summary judgment for Plaintiffs) for $8.8 million. Similarly, Mitchell Burgess and Ralph Phalen were approved by Judge Nanette Laughrey to be sole lead Class Counsel in *Doran v. Missouri Dept. of Social Services*, Case No. 07-4158-CV-C-NKL, a complex class litigation case against the State of Missouri which ultimately settled and provided statewide injunctive relief and monetary refunds to thousands of Missouri citizens. In *Lockwood v. Certegy Check Services, Inc*., 8:07-cv-1434-T-23TGW), a nationwide class action which was approved by a judge in the U.S. District Court for the Middle District of Florida, Mr. Burgess served on the Plaintiffs' Management Committee and Mr. Phalen was Co-Lead Class Counsel in a nationwide multi-million dollar identify theft case which benefited millions of citizens across the country. Mr. Burgess and Mr. Phalen were again appointed by Federal Judge Nanette Laughrey as co class-counsel to represent all Missouri drivers in a class action filed involving violations of the Federal Drivers' Privacy Protection Act, *Wiles, v. ATT*, Case. No. 2:09-CV04236-NKL (which ultimately settled).

### b. The Settlement Class Meets the Requirements of Rule 23(b)(3).

"In addition to the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, the party seeking to obtain class certification must demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (citations omitted). The Settlement Class here satisfies the requirements of Rule 23(b)(3).

The Settlement Class satisfies the requirements of Rule 23(b)(3). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases "in which a class action would achieve the economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 92 (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "The superiority analysis dovetails with the predominance analysis." *Id.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 91 (*citing Amchem*, 521 U.S. at 623). These factors are readily satisfied here.

For example, whether Defendant's actions in this case violate the TCPA and whether Defendant may be liable for damages to Plaintiff and the Settlement Class Members are common questions that predominate over any individual ones that may exist. Additionally, a class action is superior to other available methods, as the facts and claims at issue in this case are identical for each class member.

## IV. THE BEST NOTICE PRACTICABLE WAS PROVIDED

Constitutional due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action and affording them the opportunity to object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797

5

(1985); Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process, however, "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)).

### a. Distribution of Notice

Here, the notice of settlement was provided to the Settlement Class Members pursuant to the Notice Plan approved by the Court. Specifically, a Notice was mailed to the last known address of each Settlement Class Member. See Affidavit of Kelly Kratz ("Kratz Aff."), ¶¶ 6-12 & Ex. C. The Notice provided information regarding the Settlement, and directed Settlement Class Members to the toll-free number and settlement website to obtain more detailed information. *Id.* The settlement website contained the Notice, as well as a link to the Settlement Agreement and the Order Granting Preliminary Approval of the Settlement. *Id.* The settlement website was designed and administered by the Court-appointed Claims Administrator, Dahl Inc. *Id.*

In addition to the Notice that was mailed to each Settlement Class Member, notice of the proposed Settlement was also provided to the Attorney General of the United States and the attorneys general of each of the 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b) and (c). Kratz Aff. ¶¶ 4-5 & Exs. A & B. The notice materials included a cover letter summarizing this litigation and the settlement, the Agreement, Class Mail Notice,

6

an estimate of the number of class members residing in each state, and the Complaint and any materials filed with the Complaint. *Id.*

   b. **Contents of the Notice.**

The content of the Notice sent to the Settlement Class Members was approved by the Court. The Notice included the Class Definition and other identifying information, a fair summary of the parties' respective litigation positions, the general terms of the settlement as set forth in the Settlement Agreement, instructions for objecting to or opting out of the Settlement, and the date, time, and place of the Final Fairness Hearing. The Notice also included information regarding how to access the settlement website where every Settlement Class Member could read the entire Settlement Agreement and obtain further information about the case.

The Notice is sufficient because it contained information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the Settlement Class and be bound by a final judgment, and directs the recipient to a convenient location to obtain more detailed information. The Notice fairly apprises the Settlement Class Members of the terms of the Settlement, the amount of the Cash Award due the Settlement Class Member, the options that are open to them in connection with the proceedings and refers them to Settlement Class Counsel for further detailed information. All Settlement Class Members were sent a letter containing all the above information. All Settlement Class Members were automatically eligible to participate in the Settlement and were not required to provide any information and/or complete a claim form.

Accordingly, the Notice Plan outlined above, which was previously approved by the Court and implemented by the Parties, was the best notice practicable under the circumstances; and constitutes due and sufficient notice to all Settlement Class Members.

   **V.   THE TERMS OF THE SETTLEMENT ARE FAIR, REASONABLE AND ADEQUATE**

"Under Federal Rule of Civil Procedure 23(e), the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 932 (8th Cir. 2005) (*citing Grunin*, 513 F.2d at 123). A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate:

1. The merits of the plaintiff's case, weighed against the terms of the settlement;
2. The defendant's financial condition;
3. The complexity and expense of further litigation; and
4. The amount of opposition to the settlement.

*Id.* (*citing Grunin*, 513 F.2d at 124 (citations omitted)). *See also Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). The district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on "well-reasoned conclusions" and is not "mere boilerplate." *In re Wireless Telephone*, 396 F.3d at 932-33 (*quoting Van Horn*, 840 F.2d at 607 (citations omitted)). The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* (*quoting Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999) (internal quotations omitted)).

In assessing these factors "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (citations omitted). "[S]trong public policy favors agreements, and courts should approach them with a presumption in their favor." *Little Rock School District v. Pulaski County Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990); *see also Petrovic*, 200 F.3d at 1148. There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being most complex." *Assoc. for*

8

*Disabled Americans, Inc. v. Amoco Oil Corp.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Thus, in reviewing a proposed settlement, "the clear policy in favor of encouraging settlements must also be taken into account ... particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals." *Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 772 (2d Cir. 1975) (citations omitted); *LiPuma v. American Express Co.,* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005).

The Settlement in this case is fair, reasonable and adequate, is in the best interests of the Settlement Class, and final approval is clearly warranted.

**1. The Merits Of The Plaintiff's Case, Weighed Against The Terms Of The Settlement Support Final Approval.**

"A fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 73 (D. Mass. 2005) (citations omitted). In considering the question of a possible recovery, the focus is on the possible recovery at trial. *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. 1981). The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality. *See Walmart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106–07 (2d Cir. 2005); *LiPuma,* 406 F. Supp. 2d at 1323. "The most important consideration in this context is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Grunin,* 513 F.2d at 124 (*quoting West Virginia v. Charles Pfizer and Company, Inc.,* 314 F.Supp. 710, 740 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir.1971), *cert. denied*, 404 U.S. 871 (1971)); *Petrovic*, 200 F.3d at 1150.

**a. The Monetary Benefits Provided to Settlement Class Members Under the Settlement Agreement.**

The Settlement Agreement provides members of the Settlement Class with valuable and substantial monetary benefits. Defendant has agreed to create a settlement fund in the amount of $325,000.00. The balance of the settlement fund after attorney's fees, class representative compensation and notice costs is $209,667.00. All Settlement Class Members will receive a Cash Award in an amount equal to approximately $307.00 **per text** for each Paint Pro Alerts text message sent to his or her cellular phone during the Class Period, as listed in the Notice Dataset. This constitutes significant monetary relief for the class.

Not only will every Settlement Class Member be receiving a settlement check under the Settlement Agreement, but they will receive a check <u>without having to take any action</u>. This is not a claims-made settlement. Therefore, the Settlement Class Members were not required to submit a claim or proof of any sort in order to obtain the relief set forth in the Settlement Agreement.

Also of importance, if a Settlement Class Member cannot be located, despite all efforts, that money does not revert to Defendant but rather is being distributed pro rata to the other class members.

**b. Inherent Risks Associated With Further Litigation.**

Although Settlement Class Counsel believes that Plaintiff and the Settlement Class Members have a strong position on the merits given previous rulings of various state and federal courts, Settlement Class Counsel recognizes that there are still significant risks in proceeding with litigating this case through trial and/or an appeal to the Eighth Circuit. In fact, the Plaintiff and the Settlement Class Members would receive little or nothing from this case if Plaintiff fails to prevail on the merits or if class certification was denied.

In light of these significant risks, the Parties have concluded that it is desirable and certainly in the best interests of Plaintiff and the Settlement Class to settle the claims asserted in this case upon the terms set forth in the parties' Settlement Agreement. Such a settlement

will ensure that the Settlement Class will reap significant benefits, and will not be subject to the risks of proceeding through trial and/or an appeal.

### 2. The Defendant's Financial Condition.

While Defendant could likely afford a greater settlement, the result is outstanding given that all Settlement Class Members will receive immediate and significant financial relief. All Settlement Class Members who can be located will receive a check for their pro rata share of the Settlement Fund.

A significant focus of the Parties' negotiations has been to reach settlement terms that provide the Settlement Class Members with significant value while also taking into account the hurdles faced by the Settlement Class. Given the substantial risks and obstacles faced by the class in proceeding to class certification, and to trial, including but not limited to proof of damages should that become necessary, and through certain appeals, this factor weighs in favor of approval of the Settlement.

### 3. The Complexity and Expense of Further Litigation.

Plaintiff and Settlement Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute this litigation through trial and any potential appeals. Settlement Class Counsel believes that the claims asserted in the litigation have merit, however Settlement Class Counsel has taken into account the uncertain outcome and the risk of further litigation. Defendant, while also mindful of the uncertainties of litigation, has aggressively denied that it violated the TCPA or that it owes damages to the Settlement Class. Settlement Class Counsel is also mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. Given the nature of the case, it is assured that any decision on class certification and any final decision on the merits would be appealed, which would undoubtedly cause further delay and increased expense. In contrast, the Settlement provides for significant benefits for the members of the Settlement Class without

the delays and expense described herein. Due to the significant risks in this litigation and the uncertainty of prevailing both at trial and on appeal, this factor favors approval of the Settlement.

   4. **The Amount of Opposition to the Settlement.**

Significantly, even though each Settlement Class Member received notice of the Settlement via direct mail, there has not been a single objection filed to the Settlement. *See* Kratz Aff., ¶ 14. Additionally, no Class Members opted out of the Settlement. *See id.* ¶ 13..

Settlements have been approved with multiple objectors and numbers as high as 4-10% of the class objecting. *See Petrovic, supra.* Having no objectors and no opt outs shows overwhelming support for the value and benefits delivered by the Settlement. This factor weighs heavily in favor of final approval of the Settlement.

   **VI. THE REQUESTED AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES IS REASONABLE**

Settlement Class Counsel is applying to the Court for an aggregate award of attorney's fees, litigation expenses, and court costs related to the Settlement. Settlement Class Counsel is seeking an award of $108,333.00. Defendant does not object this request. This request is approximately 33 and 1/3% of the Settlement Fund and is reasonable in this matter. Settlement Class Counsel respectfully request that the Court approve payment of their reasonable attorneys' fees, costs and expenses which was agreed to between the Parties after good faith, arm's length negotiations which occurred after the other terms of the Settlement Agreement were reached.

As the United States Supreme Court has long recognized, where counsel secures a "common fund" for the benefit of a class, counsel is entitled to be compensated from the funds recovered. *See Trustees v. Greenough*, 105 U.S. 527 (1882); *Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980). The "common fund" doctrine is based on the perception that those who benefit from the prosecution of a lawsuit will be unjustly enriched if they do not share the costs in

direct proportion to the benefit each receives. *See Boeing*, 444 U.S. at 478; NEWBERG ON CLASS ACTIONS, at § 13:76 ("It is an equitable doctrine based on the rationale that successful litigants would be unjustly enriched if their attorneys were not compensated from the fund created for the litigants.").

"We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement such as this, *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir.1999), and we find no abuse of discretion in the district court's awarding 36% to class counsel who obtained significant monetary relief on behalf of the class..." *In re US Bancorp Litigation*, 291 F.3d 1035,1038 (8th Cir. 2002).

The common fund doctrine allows a court to award attorney's fees from the common fund that is created for the satisfaction of class members' claims when a class action reaches settlement or judgment. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164 (1939) (holding that the authority to award fees from the common fund stems from the "historic equity jurisdiction of the federal courts" ); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 124 (1885) (allowing payment from the common fund of "all expenses properly incurred in the preparation and conduct of the suit, including ... reasonable attorney's fees"); *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 533 (1881) (same).

The doctrine is grounded in the principles of quantum meruit and unjust enrichment, in two ways. First, the doctrine prevents unjust enrichment of absent members of the class at the expense of the attorneys. It is meant to compensate the attorneys in proportion to the benefit they have obtained for the entire class (the fund), not just the representative members with whom they have contracted. *See Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973) (holding the attorney entitled to funds under the equitable fund doctrine because he "conferred a benefit on all the class members, (one or more of whom) agreed by contract to pay for the benefit the attorney

conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them").

Second, the doctrine prevents the unjust enrichment of absent class members at the expense of the class representatives. *See Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) (stating that the doctrine, "'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense'"), *quoting Boeing*, 444 U.S. at 478; *Lindy Bros.*, 487 F.2d at 165 (noting that the class representative can claim "that by instituting the suit he has performed a service benefiting other class members. The reasonable value of that service is measured by the expenses incurred by the plaintiff on behalf of the class."). In the absence of the doctrine, only the present members, who hired the attorneys, would have to pay attorney's fees, while all the members, both absent and present, would enjoy the benefits of the settlement or judgment. The members who did not hire the attorneys would be unjustly enriched at the expense of those who did.

A district court may use its discretionary powers to determine what is a reasonable and fair award from a common fund, where the fund itself represents the benchmark from which reasonableness is measured. Usually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund, in order to ensure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented. *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D. N.Y. 1979), *judgment aff'd*, 622 F.2d 1106 (2d Cir. 1980) (approximately 53% of settlement fund awarded). *See also Greene v. Emersons Ltd., Fed. Sec. L. Rep.* (CCH) ¶93263, 1987 WL 11558 (S.D. N.Y. 1987) (securities) (46.2% of common fund awarded).

Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery. *See McNeely v. National Mobile Health Care, LLC*, 2008 WL 4816510 at *15 (W.D. Okla. 2008)

(quoting NEWBERG ON CLASS ACTIONS) (certifying a class of nursing home residents who had allegedly been deceived by the defendant insurance company, and preliminarily approving the settlement and fee request of plaintiffs' counsel, pending a full fairness hearing); *In re Top Tankers, Inc. Securities Litigation*, 2008 WL 2944620 at *13 (S.D. N.Y. 2008) (quoting NEWBERG ON CLASS ACTIONS) (approving settlement and attorney's fees agreement).

Here it is undisputed that Settlement Class Counsel was successful in securing a common fund for the class in the amount of $325,000.00. A normal contingency fee agreement in the local area can run from 33 1/3 to 50%. Based on the nature of the case and the results achieved, Settlement Class Counsel's fee request of 33 and 1/3% is well within the range of reasonableness and is appropriate based on the results achieved in this case.

### VII. CONCLUSION

Plaintiff, individually and on behalf of the Settlement Class, respectfully requests that this Court find that the Settlement Agreement is fair, reasonable and adequate and grant this Motion for Final Approval of the Settlement and the relief requested herein. A proposed order is attached.

Respectfully Submitted,

*/s/ Mitchell L. Burgess*
**BURGESS LAW FIRM, P.C.**
Mitchell L. Burgess,   MO #47524
1000 Broadway, Suite 400
Kansas City, Missouri 64105
(816) 471-1700
(816) 471-17000
mitch@burgesslawkc.com

**RALPH K. PHALEN, ATTORNEY AT LAW**
Ralph K. Phalen, MO #36687
1000 Broadway, Suite 400
Kansas City, Missouri 64105

(816) 589-0753
(816) 471-1701 FAX

**THE NORMAN LAW FIRM**
Phyllis A. Norman,   MO #55887
1000 Broadway, Suite 400
Kansas City, Missouri 64105
(816) 288-9622
(816) 471-1701 FAX
phyllis@pnormanlaw.com

**ATTORNEYS FOR PLAINTIFF AND CLASS**

## CERTIFICATE OF SERVICE

I certify that on this 9th day of February, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I further certify which sent notification of such filing to following:

**ARMSTRONG TEASDALE, LLP**
Paul Crocker, MO #57000
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108-2617
Phone (816) 221-3420
Fax (816) 221-0786
pcroker@armstrongteasdale.com

**COVINGTON & BURLING LLP**
Eric C. Bosset (admitted pro hac vice)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
ebosset@cov.com
**ATTORNEYS FOR DEFENDANT**


*/s/ Mitchell L. Burgess*
**ATTORNEYS FOR PLAINTIFF AND CLASS**